**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**WILLIAM BLOHM,**

Petitioner,

v.

**CONSTANCE REESE, Warden,**
**Federal Medical Center,**
**Rochester, Minnesota,**

Respondent.

Civil No. 01-533 (DWF/JGL)

**REPORT AND RECOMMENDATION**

William Blohm, pro se.

Gregory G. Brooker, Esq., Assistant United States Attorney, for Respondent.

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on Mr. Blohm's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §§ 2241-2243. (Doc. No. 1.) The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

For the reasons set forth below, the Court recommends that Mr. Blohm's Petition for Writ of Habeas Corpus be dismissed with prejudice.

## I. BACKGROUND

Petitioner provides little background information in his petition. The following facts are taken from Respondent's Response to Order to Show

FILED 1-17-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Cause and supporting exhibits. (Doc. Nos. 4, 5.) Since Petitioner received a copy of this response and filed a traverse which did not take issue with the facts, the Court adopts the same as the facts of the case.

In 1986, Petitioner Blohm was charged with mailing a threatening letter to a federal judge. Petitioner was adjudicated incompetent to stand trial and committed to the custody of the Attorney General on December 9, 1986. On September 23, 1988, Petitioner had recovered from his mental disease to such an extent that he was conditionally released. However, that order was rescinded on July 31, 1989 when it was discovered that Petitioner was not taking his medication and that he had threatened two federal judges and the staff of a federal medical center ("FMC") in North Carolina. Petitioner was then ordered confined at the FMC in Butner, North Carolina. On August 30, 1990, Petitioner was conditionally released from custody.

While on conditional release, Petitioner wrote a threatening letter to President Clinton. On December 17, 1993, Petitioner pled guilty to threatening the President and was sentenced to sixteen months imprisonment followed by three years supervised release with a special condition of mental health aftercare. Prior to his release, the United States filed a petition under 18 U.S.C. § 4246 with the U.S. District Court for the Eastern District of North Carolina.[1] On August 31, 1994, the United States District Court for the

[1]18 U.S.C. § 4246 provides for the indefinite hospitalization of a person who is due for release from the custody of the Bureau of Prisons but is determined, after a hearing, to be "suffering from a mental disease or defect as

Eastern District of North Carolina concluded, after an evidentiary hearing, that Petitioner continued to suffer from his mental disease and defect and found that his release would pose a substantial risk of bodily injury to another person or serious damage to property of another. The court ordered Petitioner committed to the Attorney General pursuant to 18 U.S.C. § 4246.

Since 1994, Petitioner has requested five hearings pursuant to 18 U.S.C. § 4247(h) to review his commitment status. Each time, the U.S. District Court for the Eastern District of North Carolina found that Petitioner continued to suffer from a mental disease and ordered that his commitment continue. The most recent determination was made in October 2000. At some point in late 2000 or early 2001, Petitioner was transferred to FMC-Rochester, Minnesota. Petitioner filed the instant writ on March 29, 2001.

## II. DISCUSSION

Petitioner argues that his confinement at FMC-Rochester deprives him of his liberty in violation of the due process clause of the Fifth Amendment. Petitioner states that he is "under no criminal process" warranting confinement. (Doc.1 at 1.) In short, Petitioner asserts that he cannot be confined at FMC-Rochester solely on the basis of the process outlined in 18 U.S.C. § 4246.

---

a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a), (d).

Respondent argues that the instant petition must be dismissed because Petitioner failed to exhaust his administrative remedies as required by 28 U.S.C. § 2241. Respondent further asserts that Petitioner's commitment in FMC-Rochester is legal and in conformity with the requirements of 18 U.S.C. § 4246.

### A. Whether Petitioner Was Required to Exhaust Administrative Remedies Before Bringing the Instant Petition

Petitioner brings the instant petition under 28 U.S.C. § 2241. Under that statute, Petitioner is required to exhaust his administrative remedies before filing a petition for a writ of habeas corpus in District Court. See United States v. Chappel, 208 F.3d 1069, 1069-70 (8th Cir. 2000); Pope v. Sigler, 542 F.2d 460, 461 (8th Cir. 1976) (dismissing petition when prisoner claimed to have exhausted all administrative remedies, but failed to attach documentary evidence of appropriate appeals).

Respondent argues that Petitioner has failed to exhaust his administrative remedies regarding the issues raised in the instant petition. (Benning Decl. ¶ 8; Resp. Ex. D.)[2] Petitioner concedes that he has not exhausted his administrative remedies, but asserts that he is not required to do so because he is not "under any sentence of incarceration." (Doc. No. 1 at 2.)

---

[2]Respondent states that The Federal Bureau of Prisons ("BOP") has established a three step administrative remedy program and that a prisoner has not exhausted his administrative remedies until he has received a final response from the Central Office of the BOP. (Benning Decl. ¶¶ 6-7.)

The Court finds Petitioner's argument without merit. See United States v. McAllister, 969 F. Supp. 1200, 1206, 1213 (D. Minn. 1997) (deciding habeas corpus claim of petitioner confined under 18 U.S.C. § 4246 only after finding that petitioner exhausted his administrative remedies). Accordingly, the case should be dismissed without prejudice until Petitioner can seek redress through the administrative procedures afforded him by the BOP. See 28 C.F.R. § 542 (detailing the BOP's three part administrative remedy program).

**B. Whether Petitioner's Confinement at FMC-Rochester Violates Petitioner's Constitutional Rights**

Even if Petitioner were not required to exhaust his administrative remedies, the Court also finds that the instant petition should be dismissed on the merits. Petitioner argues that his confinement violates his right to due process. Petitioner's sole reason for this allegation is that he "is made to suffer penal incarceration, unlawfully made lawful, because there are no civil psychiatric hospitals available for his civil custody." (Doc. No. 6 at 2.) Respondent asserts that Petitioner's confinement is authorized by 18 U.S.C. § 4246(d).

**1. Whether 18 U.S.C. § 4246 is Constitutional**

Petitioner challenges the constitutionality of confining persons in federal medical centers absent a criminal conviction. Petitioner's constitutional challenge is without merit.

The courts have declared that "[i]nvoluntary commitment under the terms of section 4246 does not violate due process." United States v. Evanoff, 10 F.3d 559, 563 (8th Cir. 1993) (citing Jones v. United States, 463 U.S. 354, 362 (1983)); United States v. Chairse, 18 F. Supp.2d 1021, 1024 (D. Minn. 1998) (stating that 18 U.S.C. § 4246 has "withstood various constitutional challenges") (citation omitted). The statute afforded Petitioner a hearing before his initial commitment. In addition, Petitioner may request a hearing to determine if he should be discharged "at any time during his hospitalization," providing only that he does not request a hearing within six months of a court order stating that he should continue to be hospitalized. 18 U.S.C. § 4247(h) (emphasis added). Thus, the requirements of due process are satisfied.

**2. Whether Petitioner's Confinement Comports With the Requirements of 18 U.S.C. § 4246**

Since 18 U.S.C. § 4246 is constitutional, the only remaining issue is whether Petitioner's confinement at FMC-Rochester comports with the due process protections the statute affords. 18 U.S.C. § 4246 provides, in pertinent part:

> (a) Institution of proceeding. If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons whose sentence is about to expire . . . is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another . . . [t]he court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of

> which his release would create a substantial risk of bodily injury to another person or serious damage to property of another.
>
> . . .
>
> (d) Determination and disposition. If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General. The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment. . . . If . . . such State will not assume responsibility, the Attorney General shall hospitalize the person for treatment in a suitable facility.

18 U.S.C. § 4246(a), (d). The statute was implemented "to avert the public danger likely to ensue from the release of mentally ill and dangerous detainees." Chairse, 18 F. Supp.2d at 1028 (citations omitted).

The plain language of the statute authorized the court to confine Petitioner once he was found to be "suffering form a mental disease of defect as a result of which his release would create a substantial risk of bodily injury to another person." Petitioner's commitment followed the procedures outlined in 18 U.S.C. § 4246. Prior to the issuance of the original commitment order, Petitioner was given a hearing and was represented by counsel. (Mem. and Recommendation, July 19, 1994 at 1.)

At that time, Magistrate Judge Denson found that due to paranoid schizophrenia, Petitioner "suffers from delusions that (a) he possesses extra-ordinary strength, believing himself to hold a world record; and (b) there is a

conspiracy to steal his copyrighted life story." (Id. at 2.) Judge Denson concluded that Petitioner threatened federal judges in an attempt to redress the wrong he was suffering due to the piracy of his autobiography and threatened President Clinton partially to demonstrate the ineffectiveness of his medications. (Id.) Petitioner was found to "resist" taking his anti-psychotic medications because of the side effects of lethargy and weight gain. (Id.) Judge Denson found that Petitioner's prolific writings also demonstrated that he posed a continuing threat to federal agents and the President. (Id. at 3-4.) Judge Denson weighed the evidence and found that Petitioner was "suffering from a mental disease or defect such that he presents a danger to others" and was "at risk for acting on [his] threats if released." (Id. at 4.) Judge Denson recommended that Petitioner be committed to the custody of the Attorney General under 18 U.S.C. § 4246. (Id. at 4-5.) The District Judge for the Eastern District of North Carolina adopted Judge Denson's recommendation and ordered Petitioner committed to the custody of the Attorney General. (Order, Aug. 31, 1994 at 2.)

The Court is satisfied that the District Court for the Eastern District of North Carolina proved by clear and convincing evidence that Petitioner's release would have created a substantial risk of bodily injury to another person. See United States v. Steil, 916 F.2d 485, 487 (8th Cir. 1990). There is also clear and convincing evidence that Petitioner continues to pose a threat to the public. Petitioner's confinement has been reviewed five times. All

five times Petitioner was afforded a hearing in compliance 18 U.S.C. § 4247(h), and all five times it was determined that his release from custody would create a substantial risk of bodily injury to another person or serious damage to the property of another. (Resp. Ex. C.) The most recent order was signed on October 2, 2000. (Id.) In his current petition, Petitioner does not argue that these determinations are incorrect or that he does not pose a risk to others. More importantly, Petitioner does not even argue he his case has not been handled in concert with the requirements of 18 U.S.C. §§ 4246 and 4247.

The Court finds that Petitioner has been afforded the due process required by the statute. 18 U.S.C. § 4246 provides that in the absence of a state assuming responsibility for an individual's "custody, care, and treatment," the Attorney General must hospitalize people committed under the statute in "suitable facilities." 18 U.S.C. § 4246(d). Petitioner cites no reasons why FMC-Rochester is an inappropriate place for his confinement and fails to suggest any other place which would be more suitable. Petitioner does state that there "are not civil psychiatric hospitals" available to him. However, this statement seems to support Petitioner's placement at FMC-Rochester. FMC-Rochester is accredited by the Joint Commission on Accreditation of Health Care Organizations and can provide Petitioner the round-the-clock treatment he needs. (Benning Decl. ¶ 5.) Thus, the Court finds that Petitioner's confinement at FMC-Rochester comports with the requirements of 18 U.S.C.

§ 4246, a constitutional statute, and recommends that his Petition for Writ of Habeas Corpus be denied on this basis also.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

(1) Petitioner Blohm's Petition for Writ of Habeas Corpus (Doc. No. 1) should be **DENIED**; and

(2) This case should be **DISMISSED WITH PREJUDICE**.

Dated: January 16, 2002

JONATHAN LEBEDOFF
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by Feb. 5, 2002, a writing which specifically identifies those portions of this Report to which objections are being made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.